# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHONG L. LEE,

      **Plaintiff,**

v.                                                          Case No. 21-CV-037

NICHOLAS SANCHEZ, *et al.*

      **Defendants.**

## DECISION AND ORDER

Plaintiff Chong L. Lee, who is representing himself and confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Lee was allowed to proceed on retaliation claims under the First Amendment against defendants Lieutenant David Dingman and Correctional Officer Trevor Standish for allegedly trying to prevent Lee from filing a grievance and for issuing him a conduct report and placing him in segregation because he told them he was going to file a grievance against Standish. Lee was also allowed to proceed against defendant Nicholas Sanchez under a theory of supervisor liability because Sanchez allegedly failed to act when Lee told him that he had been placed in segregation by Dingman and Standish in retaliation for exercising his first amendment rights.

The defendants filed a motion for summary judgment. (ECF No. 27.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos.6, 16.)

## PRELIMINARY MATTERS

The defendants in their reply brief argue that Lee failed to follow Fed. R. Civ. Pro. 56 and Civil L.R. 56 by failing to respond to their proposed findings of fact. As a result, the court should deem their facts admitted for purposes of summary judgment. (ECF No. 37.) However, district courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the evidence in the light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Lee's response materials do not formally conform with the rules, he cites to his complaint, which invokes 28 U.S.C § 1746, converting the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). Lee also cites the defendants' materials. As such, the court will consider the information contained in Lee's submissions where appropriate in deciding the defendants' motion.

## FACTS

On July 24, 2019, at approximately 5:30 p.m., defendant Correctional Officer Trevor Standish saw plaintiff Chong L. Lee leave his cell with what he thought was mail in his hand. (ECF No. 29, ¶¶ 5-7.) Standish told Lee he could not be on the range of the housing unit at that time nor could he mail anything because it was time to lock down into cells. (*Id.*, ¶ 8.) Lee responded, "Seriously?", and then returned to his cell. (*Id.*, ¶ 11.) A few minutes later, Lee left his cell again, this time with a pen and paper, and approached Standish. (*Id.*, ¶ 12.) Standish ordered Lee to return to his cell. (*Id.*)

2

Lee refused to return to his cell and instead demanded that Standish give him his "name and badge number." (*Id.*, ¶ 14.) According to the defendants, Standish was wearing an ID tag on his uniform that Lee could clearly see, and it was Standish's practice to always give his name to any prisoner who asked for it. (*Id.*, ¶¶ 15-16.) According to Lee, Standish refused to give his name. (ECF No. 36 at 4.)

The defendants state that Standish again ordered Lee to return to his cell, and Lee ignored that order, instead shouting loudly. (ECF No. 29, ¶ 18.) Lee's shouting caused other inmates to also start yelling. (*Id.*) According to the defendants, Standish ordered Lee another eight times to return to his cell, and after Lee refused the eighth order Standish took Lee to his cell. (*Id.*) Standish states that Lee never told him he was going to file a grievance against him. (*Id.*, ¶ 17.)

Lee asserts he was not given several orders to return to his cell. Instead, he states that Standish, as a means to intimidate him, demanded Lee give him his name and cell number. (ECF No. 36 at 4.) Lee states he complied with this demand, then locked himself in his cell. (*Id.*) Standish did not escort Lee to his cell. (*Id.*) Lee also denies that his own yelling caused disruptive behavior. (*Id.*) Instead, the other prisoners on the housing unit observed Standish refusing to give Lee his name, so they began yelling on their own for Standish to provide his name. (*Id.*) Lee also asserts that Standish must have known Lee was going to file a grievance against him because that would be the only reason Lee would ask for his name. (*Id.* at 3.)

Once Lee was in his cell Standish notified defendant Lt. David Dingman of Lee's behavior. (ECF No. 29, ¶¶ 19-21.) Dingman came to the housing unit to "assess the

3

situation." (*Id.*, ¶ 22.) Dingman decided to place Lee in temporary lock up (TLU), which is a "non-punitive status allowing an inmate to be separated from the general population pending further administrative action." (*Id.*, ¶¶ 23-24.) Dingman placed Lee in TLU so he could investigate what had transpired. (*Id.*) Dingman told Lee he was placing him in TLU because he was refusing to cooperate with Standish and obey orders. (*Id.*, ¶ 26.) Dingman states that Lee did not tell him he intended to write an inmate complaint against Standish. (*Id.*, ¶ 25.)

Lee does not dispute that Dingman came to escort him to TLU. However, he asserts that Dingman saw him writing a grievance, and Lee told him he was writing a grievance. (ECF No. 36 at 7.) Lee attempted to explain the situation to Dingman, including the contents of his grievance, so Dingman could investigate. (*Id.*) Instead, Dingman told Lee that if he did not comply and go to TLU he would use force in order to make Lee comply. (*Id.*) Lee states that Dingman's threat of force "was to 'chill' [him] from further protest or in this case speaking about the actions of his subordinate." (*Id.*)

Dingman then told Standish to file a conduct report against Lee for being disruptive and disobeying orders. (ECF No. 29, ¶ 29.) Dingman, per policy, also informed his supervisor, defendant Captain Nicholas Sanchez, that Lee was moved to TLU because he was disruptive and disobeyed orders. (*Id.*, ¶¶ 32-33.) The defendants state Dingman did not inform Sanchez that Lee was threatening to file a grievance against Standish. (*Id.*, ¶ 34.) Sanchez did not take any further action because Dingman had appropriately handled the situation. (*Id*, ¶ 36.)

4

Once placed in TLU, pursuant to policy, Lee filled out Form DOC-67, which is given to a prisoner so he can make a statement explaining why he feels placement in TLU is not appropriate. (ECF No. 36 at 7.) On his form Lee wrote:

> I am being placed in Seg for trying to get an officer's name, so I can file a complaint on him. He would not tell me his name or how to spell it. I feel that this is in retaliation to stop me from filing a complaint. Then while I was writing a DOC-643 interview request form, I was placed in seg, so I still feel as I am being retaliated against. I have spoken to Capt., Sanchez and Lt. Dingman.

(ECF No. 36-1 at 1.) Lee asserts he talked to Sanchez as well as Dingman as he was filling out this form, and Sanchez had an opportunity to investigate his claim of retaliation but did not. (ECF No. 36 at 8.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Lee claims that Standish violated his First Amendment rights by refusing to give Lee his name to prevent him from filing a grievance; Dingman violated his First Amendment rights by ordering Standish to give Lee a conduct report and placing him in TLU; and Sanchez violated his First Amendment rights by not investigating the propriety of Standish's and Dingman's actions. To state a First Amendment retaliation claim, a plaintiff must establish that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Regarding Standish, at screening Lee was allowed to proceed on claim that Standish retaliated against him by writing a conduct report and placing him in TLU in retaliation for Lee filing a grievance. However, the record now makes clear that Lee only alleges that Standish's alleged retaliatory act was refusing to give Lee his name. Refusing to give Lee his name, by itself, does not create a deprivation that would rise to the level of a retaliatory act.

Even if Standish's refusal to give his name was an attempt to impede Lee's ability to file a grievance against him, on July 26, 2019, Lee filed a grievance. (*See* ECF No. 13-2 at 10.) Thus, Standish's refusal to give Lee his name did not prevent Lee from filing a grievance. As such, Lee did not suffer a deprivation. Lee also argues that, by demanding Lee give him his name and cell number, Standish intimidated him. However, Lee did not explain how this intimidation prevented him from filing a grievance. Thus, no reasonable jury could conclude that Standish retaliated against Lee.

Regarding Dingman, no reasonable jury could conclude that his decision to place Lee in TLU and have Standish write a conduct report was the result of Lee threatening to file a grievance against Standish. In other words, Lee's First Amendment activity was not a motivating factor in those decisions. To demonstrate that Lee writing a grievance against Standish was a motivating factor, Lee "must show more than that the defendants' actions occurred after his protected activity; he must show that defendants had actual knowledge of his protected conduct and acted because of it." *Johnson v. Eckstein*, Case No. 18-CV-1696, 2020 WL 6323412 at *8

7

Case 2:21-cv-00037-WED   Filed 11/03/22   Page 7 of 11   Document 38

(E.D. Wis. Oct. 28, 2020) (citing *Healy v. City of Chicago*, 450 F.3d 732, 740-741 (7th. Cir. 2006). Where a plaintiff merely speculates as to the defendants' retaliatory motives, that alone "cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment." *Parrilla v. Beahm,* Case No. 17-C-841, 2018 WL 3717026 at *6 (E.D. Wis. Aug. 3, 2018) (citing *Devbrow v. Gallegos,* 735 F.3d 584, 588 (7th Cir. 2013)).

To establish that Dingman knew that Lee was planning to file a grievance against Standish, Lee states that Dingman saw him writing his grievance. However, according to the record, by that time Dingman had already decided to place Lee in TLU after concluding that he had engaged in disruptive behavior.

While it is true that Dingman did not direct Standish to write the conduct report until after Dingman escorted Lee to TLU and after he witnessed Lee writing the grievance, the timing alone is not enough to establish retaliatory motive. A defendant cannot be found liable for retaliation where he can show the deprivation would have occurred even if the alleged retaliatory motive did not exist. *See Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir. 2013) (quoting *Green v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (A defendant is not liable for retaliation where he can show "'that his conduct was not a necessary condition of the harm—the harm would have occurred anyway.'"). The undisputed evidence demonstrates that Lee's interaction with Standish, whether he intended it or not, caused other prisoners to begin yelling, creating a disruption. It is also undisputed that Lee refused Standish's order to lock into his cell (albeit Lee denies that he refused eight separate orders from Standish to

8

lock into his cell). Whether it was eight times or only once is irrelevant, because it is undisputed Lee was disobedient. Thus, Lee would have received a conduct report for these violations regardless of whether Dingman knew he was writing a grievance against Standish.

Turning to Sanchez, Lee asserts that Sanchez's decision not to investigate the actions of Dingman and Standish after he learned of the situation amounted to retaliation under a theory of supervisor liability. However, because the court has determined that Standish and Dingman did not violate Lee's constitutional rights, there is no underlying constitutional violation bolstering Lee's supervisor liability claim. As a result, it must be dismissed. *See Adell v. Hepp*, Case No. 14-CV-1277, 2015 WL 6680237 at *8 (E.D. Wis. Nov. 2, 2015) (citing *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015)) ("[W]ithout any underlying constitutional violation by [the subordinate defendant, the plaintiff's claim against the supervisors] for 'failing to intervene" as supervisors, must also fail.")

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued they were entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 3rd day of November, 2022.

BY THE COURT

_William E. Duffin_
WILLIAM E. DUFFIN
United States Magistrate Judge